IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

A.D.,[1]

                    Plaintiff,

vs.                                    Case No. 21-1081-SAC

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

                    Defendant.


**MEMORANDUM AND ORDER**

          This is an action appealing the denial of Social Security disability benefits.  Plaintiff filed her application for benefits on June 6, 2019 and alleges that she has been disabled since that date.  The administrative law judge (ALJ) conducted a hearing on September 28, 2020, considered the evidence, and decided on November 2, 2020 that plaintiff was not qualified to receive benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. Standards of review

          To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] The initials are used to protect privacy interests.

"insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. The ALJ's decision (Tr. 15-27).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 16-17). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.  The ALJ also determined that there were light work positions in the economy that plaintiff could perform.

The ALJ made the following specific findings in her decision. First, plaintiff last met the insured status requirements for Social Security benefits through September 30, 2024.  Second, plaintiff has not engaged in substantial gainful activity since June 6, 2019.  Third, plaintiff has the following severe impairments:  seizure disorder; major depressive disorder; PTSD; and unspecified anxiety disorder.  Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Fifth, according to the ALJ, plaintiff has the following residual functional capacity (RFC).  She can perform light work; stand or walk in combination for 6 hours in an 8-hour workday and

sit for 6 hours in an 8-hour workday.  She can occasionally balance or stoop and may not climb ladders, ropes and scaffolds, but can occasionally balance or stoop and frequently kneel, crouch and crawl.  She must avoid temperature extremes; she may not operate a motorized vehicle; and she may not be exposed to certain hazards such as heights, mechanical parts, and other dangers.  Plaintiff "can understand and remember simple and intermediate instructions and can maintain concentration, persistence and pace for simple and intermediate tasks with normal breaks that are not performed in tandem or as an integral part of a team."  (Tr. 19).  She "may not perform fast-paced assembly line type of work but can meet production requirements, predetermined by others, that allow her to sustain a flexible and goal oriented pace."  Id.  Plaintiff can perform low stress work that does not involve providing customer service to the general public and that requires no more than occasional interaction with coworkers and supervisors.  She must be limited to only occasional work-related decision-making and no more than occasional changes in the workplace.  Id.

Based upon the testimony of a vocational expert, the ALJ determined that plaintiff could not perform any past relevant work, but that she could perform jobs existing in the national economy, such as mail clerk, photocopy machine operator and housekeeper. (Tr. 26).

III. <u>The decision to deny benefits shall be affirmed.</u>

Plaintiff argues that the ALJ's analysis of plaintiff's difficulty working in proximity to others is not supported by substantial evidence and therefore, the denial of benefits should be reversed.  Doc. No. 14, p. 7.

According to plaintiff's testimony, she previously worked in a permanent part-time position, 20 hours a week (sometimes more), as a "retail merchandiser."  (Tr. 43).  She did this job for several years.  She stocked shelves, removed out-of-date products, tagged items, straightened merchandise and cleaned displays in supermarkets and stores in various Kansas towns and surrounding states.  Plaintiff performed the job in tandem with her mother who drove plaintiff to work and was available to help if plaintiff had a seizure or a panic attack.[2]  Plaintiff testified that she could not do the job without her mother.  (Tr. 49).

Plaintiff stated that one reason she stopped working in 2020 was she feared contracting COVID-19.[3]  (Tr. 43).  When plaintiff was asked what kept her from working full-time, plaintiff replied that she has seizures and that her claustrophobia gives her a hard time.  (Tr. 44).  Plaintiff also described anxiety and panic attacks when working in proximity to other people.  (Tr. 47-48).  Plaintiff's counsel emphasized at the hearing before the ALJ that

---

[2] Plaintiff does not drive because of her seizure history.
[3] Plaintiff also stopped working for a period in 2019 after her mother broke her leg and could not work with plaintiff or drive plaintiff.  (Tr. 420).

plaintiff cannot work in visual proximity of other people.  (Tr. 40).

As already recounted here, the ALJ set forth a lengthy description of plaintiff's RFC.  (Tr. 19).  Then, to support her RFC findings, the ALJ discussed the evidence in the record.  At the beginning of this discussion, the ALJ stated that she considered all of plaintiff's symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.  (Tr. 19).  The ALJ described plaintiff's oral and written statements regarding her symptoms, including her seizure logs or questionnaires.  The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 20).  Then, she explained this decision with a review of the evidence which covered approximately five pages.

The ALJ concluded that plaintiff's treatment history with three doctors, Drs. Davis, Dewitt and Kumar, did not support the alleged frequency, severity or duration of plaintiff's alleged seizure history.  (Tr. 20).  The ALJ also found that Dr. Koeneman's consultative examination and plaintiff's activities of daily living (ADLs) indicated that plaintiff's seizure activity was not

disabling.  Plaintiff does not directly challenge this part of the ALJ's opinion.

The ALJ then considered plaintiff's mental impairments and concluded that plaintiff has had "historical complaints of anxiety with panic attacks that she relates to seizure activity, being in close proximity to others and crowds; however, the evidence does not support the claimant's allegations that her mental impairments are work preclusive."  (Tr. 22).  The ALJ supported this conclusion with a discussion of the medical record and plaintiff's ADLs.

The ALJ referenced treatment records with plaintiff's primary care provider and with a mental health therapy provider plaintiff visited from January 2020 to August 2020.  These records showed some issues with anxiety and nervousness, fluctuating moods depending upon situational stressors, and periods of improvement.[4] She also reviewed plaintiff's ADLs, which included working in retail, attending church and being involved in her community.  (Tr. 22, citing Ex. 11F/44).  The ALJ further noted that plaintiff and her mother had reportedly quit their jobs to avoid COVID-19.[5]  (Tr. 22).

---

[4] Plaintiff also testified that therapy was helpful, but she was still fighting anxiety.  (Tr. 48).
[5] This was reported in a treatment record from April 3, 2020.  (Tr. 512). Plaintiff had earnings from her work as a retail merchandiser after the alleged onset date of disability, but the work did not amount to full-time employment or substantial gainful activity.

The ALJ found persuasive the mental status report done by Dr. Scott Koeneman. (Tr. 25). Plaintiff told Dr. Koeneman that she gets along with just about anybody, but that she keeps her distance from people she did not know. (Tr. 463). Dr. Koeneman considered plaintiff's reports of panic attacks triggered by close spaces (Tr. 462), but he determined that plaintiff was capable of following intermediate-level instructions and of getting along with coworkers, supervisors and the general public in a low contact work environment. (Tr. 464). He also found that plaintiff could sustain her attention doing intermediate tasks over an 8-hour workday, that her persistence appeared intact, and that plaintiff appeared capable of maintaining employment. (Tr. 464).

The ALJ also found the opinion of state agency medical consultant Phillip Rosenshield, PhD., to be persuasive, although she diverged from his opinion by finding plaintiff moderately (not mildly) limited in adapting and managing based on plaintiff's reports of claustrophobia and anxiety. (Tr. 24). Dr. Rosenshield considered plaintiff's report of difficulty being "around people." (Tr. 84). Dr. Rosenshield noted in his report that plaintiff did grocery shopping, visited with friends, and attended comic conventions twice a year. (Tr. 83). He concluded that plaintiff could follow instructions and get along with authority figures and perform adequately in a low contact working environment. (Tr. 88-89).

Finally, the ALJ discussed the opinion of Maria Cheney, LSCSW, who provided mental health therapy for plaintiff. The ALJ concluded that the medical evidence in the record did not support Cheney's conclusion that plaintiff would be absent from work 4 days each month or that plaintiff had marked limitations in concentration, persistence or pace; in the ability to set realistic goals and plan independently; and in social functioning.[6] (Tr. 24).

In analyzing the ALJ's treatment of plaintiff's testimony regarding her symptoms, the court is mindful that it should usually defer to the ALJ. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). This is not an absolute rule. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). The possibility of drawing two inconsistent conclusions from the evidence, however, does not mean that the agency's decision is unsupported by substantial evidence. Lax, 489 F.3d at 1084.

Plaintiff contends that evidence of intermittent improvement from the mental health therapy notes, and plaintiff's ADLs and other endeavors, do not provide sufficient support for the ALJ's decision. The court agrees that the mental health therapy notes do not demonstrate a consistent pattern and that plaintiff's ADLs and other undertakings often do not involve situations where

---

[6] As to the ability to work in coordination with or proximity to others, Cheney concluded that plaintiff was only moderately limited. (Tr. 541).

plaintiff is in proximity to persons she does not know well. Therefore, the ALJ's opinion gains only limited support from those sources.  The ALJ, however, also relied upon the medical evidence and opinions rendered by Dr. Koeneman and Dr. Rosenshield.  This is consistent with SSR 16-3p, 2016 WL 1119029 *4 (3/16/2016).  The ruling states:  "In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence, an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Id. at *4. The ruling permits the ALJ to "evaluate whether [an individual's] statements are consistent with objective medical evidence and other evidence, [including] . . . statements and medical reports about an individual's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms."  Id. at *6.

Upon careful review, the court finds that the ALJ's discussion of the medical opinion evidence, together with the evidence from plaintiff's medical examinations and plaintiff's ADLs and other activities, provided specific reasons and substantial evidence to support the ALJ's analysis of plaintiff's testimony concerning her symptoms.  The ALJ's conclusions regarding plaintiff's RFC and

ability to perform substantial gainful employment are supported by the same sources together with the testimony of the vocational expert.  There was substantial evidence to support the conclusion that plaintiff could perform low stress light work occupations, not requiring work in tandem or as an integral part of a team, with no more than occasional interaction with coworkers or supervisors, and that do not involve customer service to the general public.  This adequately addressed plaintiff's testimony and her contention that she could not work in proximity to others.

IV. <u>Conclusion</u>

As explained in this memorandum and order, the court rejects plaintiff's arguments to reverse and remand the denial of benefits to plaintiff.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 13th day of December 2021, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge